UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CR-112 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL E. ROBINSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal action is before the Court on the Report and Recommendation (the "R&R") [Doc. 26], entered on February 4, 2011 by U.S. Magistrate Judge C. Clifford Shirley, Jr. The defendant, Michael E. Robinson, is charged in an indictment [Doc. 1], with the alleged offenses of aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (count one), using and brandishing a firearm during and in relation to the robbery charged in count one, in violation of 18 U.S.C. §§ 924(c) and 2 (count two), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 2 (count three).

The defendant filed a motion to suppress [Doc. 17] on grounds that the police violated his rights under the Fourth and Fifth Amendments to the U.S. Constitution. The United States filed a response, asserting that the defendant's rights were not violated [Doc. 20]. On December 8, 2010, Magistrate Judge Shirley held a motion hearing during which the magistrate judge heard evidence and arguments on the defendant's motion [*see* Docs. 22, 25].

At the end of the hearing, the magistrate judge took the motion to suppress, the testimony, and the parties' arguments under advisement. Following the hearing, the government filed a notice [Doc. 24] clarifying the testimony of one of its witnesses.

In the R&R [Doc. 26], Judge Shirley found no basis to suppress the evidence as argued in the defendant's motion. The magistrate judge also found that all but one of the defendant's statements were made voluntarily. Accordingly, Judge Shirley recommended that the defendant's motion to suppress be granted in part, in regard to the one statement the magistrate judge found to be made involuntarily, and denied in all other aspects. The defendant filed objections to the R&R [Doc. 30], and the government filed a response to those objections [Doc. 32].

This matter is now before the Court on the defendant's objections.

## I. Background Facts[1]

At 2:21 A.M., on September 20, 2010, Officer Hanshew, along with his partner, DPD Officer Josh Rigsby ("Officer Rigsby"), who was in a separate patrol car, responded to a radio dispatch that an armed robbery had occurred at a Waffle House [Doc. 26, p. 3]. The dispatcher told the officers that the robber was a black male in camouflage and sunglasses, carrying a yellow bag and armed with a handgun, and headed on foot in the direction of a

---

[1] At the motion hearing, the government presented the testimony of Officer Shane Hanshew ("Officer Hanshew") and Detective Lieutenant Kenneth Lodwick ("Detective Lodwick"), both of the Dandridge Police Department ("DPD"). The findings of fact in the R&R are based on the testimony of these two witnesses [*see* Doc. 25], the exhibits presented at the hearing [*see* Doc. 23], and the supplemental exhibit filed by the government [*see* Docs. 24, 24-1]. The defendant has objected to portions of the magistrate judge's findings of fact, along with his legal analysis and conclusions. The Court notes and considers such objections herein.

Kentucky Fried Chicken and the Justice Center [*Id.*]. Upon arriving at the Waffle House, Officer Hanshew saw a Chevrolet pickup truck pull out from a rarely-used side access road beside the Waffle House [*Id.*]. The truck was combing from the direction the officers had been advised the robber was headed [*Id.*]. Officer Hanshew testified at the hearing that the truck pulled out quickly from the access road and that it did not have its lights on or yield to traffic [*Id.*]. Officer Rigsby, who was in the front patrol car, activated his emergency lights and the truck sped away from the officers [*Id.*].

Officer Hanshew received another radio dispatch that a caller had said that the robber was behind a brick wall at the Waffle House [Doc. 26, pp. 3-4]. Officer Hanshew testified that he stopped in the median for confirmation of this information [*Id.*, p. 4]. The officer, however, decided that there was a time lapse between the call and the dispatcher's broadcast, and so he left the median and continued in pursuit of the truck [*Id.*]. During the pursuit, both officers had their patrol lights activated and were traveling at speeds of 70, 85, and 100 miles per hour, in excess of the posted speed limit [*Id.*]. The pursuit lasted for approximately nine minutes and covered ten miles [*Id.*]. During the pursuit, Officer Rigsby radioed that he saw the occupants of the truck throw an object out the window [*Id.*]. Other law enforcement officers joined the pursuit which ended in Cocke County when the truck drove over a "spike strip" the police had laid across the road [*Id.*].

After the truck stopped, approximately fifteen to twenty officers approached it with their weapons drawn [Doc. 26, p. 4]. The officers yelled to the occupants to show their hands and the driver and the front seat passenger exited the truck unassisted [*Id.*]. Both were

handcuffed and taken into custody [*Id.*].  An officer yelled out that another occupant, later

identified as the defendant, remained in the back seat of the truck [*Id.*].  The defendant was

ordered out but did not obey the order [*Id.*].  An officer grabbed the defendant and pulled him

from the rear passenger side of the truck [*Id.*].  Before the officers could ask the defendant

any questions, the defendant said, "Don't beat me.  I done it." [*Id.*, p. 5].  None of the officers

physically hit the defendant, although Officer Hanshew testified that the officers may have

had their weapons pointed at him [*Id.*].  The officers then arrested the defendant for the

robbery of the Waffle House, handcuffed him, and placed in the back of Officer Hanshew's

patrol car [*Id.*].

Officer Hanshew stood outside the open back door of his patrol car and read the

defendant his *Miranda* rights [Doc. 26, p. 5].  Officer Hanshew testified that at the time he

read the defendant his rights, the atmosphere was "calm" and no officers were yelling or had

their weapons out [*Id.*].  The defendant told the officer that he understood his rights and that

he wanted to talk [*Id.*].  Officer Hanshew asked the defendant what had been thrown out of

the truck during the pursuit and the defendant responded that it was "weed." [*Id.*].  The

defendant also stated that the officer had him and the gun and what more did the officer want

[*Id.*].  Officer Hanshew testified that while the defendant appeared to be under the influence

of narcotics, he was certain that the defendant understood his rights and voluntarily gave his

statement [*Id.*].

4

Detective Lodwick, who arrived at the scene about five to ten minutes after the truck was stopped and after the three occupants had been taken into custody, also stood by the open patrol car door and spoke with the defendant [Doc. 26, pp. 5-6]. The defendant confirmed to Detective Lodwick that he had been advised of his rights [*Id.*]. The detective read the defendant his rights for a second time [*Id.*]. The defendant stated again that he understood his rights [*Id.*]. After Detective Lodwick asked the defendant what had happened, the defendant stated that he robbed the Waffle House and that he acted alone [*Id.*]. The detective testified that the defendant seemed coherent during their conversation and that the atmosphere was calm [*Id.*].

The truck was stopped in the road, partially blocking it [*Id.*]. Detective Lodwick determined that the truck would be seized and impounded pursuant to DPD policy because the tires had been punctured, the truck was disabled and partially blocking the road, and because it had been used in the commission of a crime and was wanted for asset forfeiture [Doc. 26, p. 6]. The officers conducted an inventory search of the truck, during which Officer Hanshew found a yellow shirt tied to form a bag and a loaded handgun on the floorboard of the backseat [*Id.*, pp. 6-7]. Cash was recovered from the front floorboard and from the defendant's person [*Id.*, p. 7].

The defendant was transported to the police station where he was interviewed by Detective Lodwick [Doc. 26, p. 7]. The defendant was read his *Miranda* rights for a third time, reviewed a rights waiver, and initialed each sentence [*Id.*]. As the defendant gave his statement, the detective wrote it out [*Id.*]. Detective Lodwick testified that the defendant

became agitated as he was giving his statement and, after about fifteen or twenty minutes, the defendant ended the interview [*Id.*].

After the interview, Officer Hanshew transported the defendant to the Justice Center [Doc. 26, p. 7]. During the drive, Officer Hanshew asked the defendant why he had thrown the drugs from the truck and not the gun [*Id.*]. The defendant responded, "You know." [*Id.*]. The officer also asked the defendant if he intended to use the gun [*Id.*]. The defendant stated that he planned to use the gun if the officers tried to shoot him and that he knew he was going to prison for a long time so he was going to make it bad [*Id.*, p. 8].

## II.    Analysis

### A.    Standard of Review

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected. In doing so, the Court has carefully considered the R&R [Doc. 26], the parties' underlying and supporting briefs, [Docs. 17, 20], the transcript from the motion hearing [Docs. 25, 24], the defendant's objections [Doc. 30], and the government's response to those objections [Doc. 32], all in light of the relevant law. For the reasons set forth herein, the Court will overrule the defendant's objections [Doc. 30], accept in whole the R&R [Doc. 26], and grant in part and deny in part the defendant's motion to suppress [Doc. 17].

**B.     The R&R**

In the motion to suppress, the defendant argued that the police lacked probable cause to stop the truck and, even if the truck was properly stopped, the officers did not have probable cause to search the defendant's person or to arrest him. The defendant also argued that the statements taken from him were improperly obtained.

The R&R found that the officers had probable cause to stop the truck, in which the defendant was a passenger, for speeding. The R&R also found, based on a totality of the circumstances, that the officers had probable cause to believe that it was the defendant who robbed the Waffle House and to arrest him for the robbery. The R&R also found that the officers could properly search the defendant's person following his arrest. In regard to the search of the truck, the R&R found that the police properly searched the truck under both the automobile exception and the inventory search exception to the warrant requirement. In regard to the defendant's statements, the R&R found that the defendant's statement upon his removal from the truck was a spontaneous, voluntary utterance that did not require a prior *Miranda* warning. The R&R also found that three of the defendant's custodial statements were voluntarily made by the defendant following *Miranda* warnings: (1) the statement to Officer Hanshew while the defendant was in the patrol car; (2) the statements to Detective Lodwick while the defendant was in the patrol car; and (3) the statements to Detective Lodwick at the police station. Finally, the R&R found that the defendant's statement to Officer Hanshew, made while en route to the Justice Center, should be suppressed because

7

Officer Hanshew did not scrupulously honor the defendant's invocation of his right to remain silent.

## C. The Defendant's Objections to the R&R's Factual Findings

The defendant objects to the magistrate judge's finding that the truck pulled out "from a side access road beside the Waffle House." [Doc. 26, p. 3]. The defendant argues that this finding is incorrect because the truck was not beside the Waffle House, but was 1/2 to 1/8 of a mile from the Waffle House.

The Court overrules this objection. Judge Shirley found that the "side access road" was beside the Waffle House, not that the truck itself was beside the Waffle House. However, regardless of whether the truck was beside the Waffle House or 1/2 mile away, Officer Hanshew still observed the truck in close proximity to the restaurant and observed it pulling out of, at a fast pace, a rarely used road with few homes or businesses [Doc. 26, p. 3]. Accordingly, the Court finds that the defendant's objected to distinction in the truck's location would not significantly alter the magistrate judge's determination regarding the relationship between the proximity of the truck to the Waffle House and the robbery.

The defendant's next objection is that the magistrate judge improperly accepted Officer Hanshew's testimony that he determined there was a time delay in the dispatcher's information that the robber was hiding behind a brick wall and Officer Hanshew's decision to pursue the truck instead of wait for a confirmation. The defendant also argues that the magistrate judge did not properly consider the information provided by the caller that the police were going in the wrong direction.

8

The Court overrules these objections. Judge Shirley noted Officer Hanshew's consideration of the information provided by the caller and his conclusion that there was a time lapse [Doc. 26, pp. 3-4]. Judge Shirley was presented with no conflicting testimony and no other evidence that the officer improperly considered the time lapse or incorrectly decided to pursue the truck. Moreover, Officer Hanshew testified that he was not aware, until later, of the caller who stated that the police were going in the wrong direction [*Id.*, p. 4; *see also* Tr., pp. 44, 62]. The Court has been presented with no credible evidence that these findings of fact by the magistrate judge are improper.

Next, the defendant objects to the magistrate judge's finding that the defendant "remained in the back seat of the truck[,]" and when the defendant was "ordered out of the truck, . . . he did not comply." [Doc. 26, p. 4]. The defendant argues that this finding conveys the implication that the defendant resisted the officers when in reality, he only remained in the truck because he was terrified.

The Court overrules this objection because neither the magistrate judge nor this Court have been presented with any other credible explanation for why the defendant did not exit the truck upon being ordered to do so and why such a refusal was not a refusal to obey a police order. Even if the defendant was frightened and that was the real reason he did not exit the truck, this would not alter the magistrate judge's determination that the officers had probable cause to stop the truck and arrest the defendant. The truck was stopped for speeding, not because the defendant refused to comply with a police order [*see* Doc. 26, p. 9]. Moreover, other circumstances of the pursuit and stop gave the officers probable cause

9

to arrest the defendant for the robbery, *e.g.*, the close proximity of the truck to the Waffle House at the time of the robbery, the high speed at which the truck was traveling, the fact that the officers had observed an object being tossed out of the truck, and the refusal of the driver of the truck to stop until forced to do by a spike strip.

The defendant also objects to the magistrate judge's findings that: the atmosphere was "calm" while the defendant was read his *Miranda* rights; that the defendant understood his *Miranda* rights; and that the defendant was "coherent" at the scene of the stop but his later statement at the police station was "rambling." The defendant also argues that Officer Hanshew's and Detective Lodwick's statements were inconsistent.

The Court overrules these objections because the defendant has provided no evidence or testimony to discredit or contradict the officers' testimony regarding whether the atmosphere was "calm" and the defendant's demeanor. The defendant's only arguments for these objections are that "[i]t is unrealistic to believe" that the scene was calm after the pursuit [Doc. 30, p. 6], and a query regarding how the defendant could be more coherent at the scene of the stop as opposed to his later demeanor at the police station [*Id.*, p. 10]. The defendant is thus challenging the officers' testimony without providing any evidence refuting the testimony and, unlike, the defendant, the Court does not find it unreasonable that the defendant's demeanor changed from the time he was initially arrested to an hour or so later when he was interviewed at the police station. The Court has also reviewed the transcript from the hearing and while the Court notes that several of the statements and descriptions of

events provided by the officers differ as to time and chronology, the Court does not find the testimony materially inconsistent.

In sum, the Court hereby overrules the defendant's objections to the factual findings of the magistrate judge.

**D.    Objection to the Finding that the Stop of the Truck was Reasonable**

The defendant objects to the R&R's finding that the officers had probable cause to stop the truck.  In support of this objection, the defendant argues that Officer Hanshew could not point to objective reasonable facts to support a suspicion of criminal activity.  The defendant also argues that the mere presence of the truck near the Waffle House is not sufficient to establish that it was involved in criminal activity.

The Court overrules this objection.  In the R&R, the magistrate judge found that the officers had probable cause to stop the truck for speeding.  Judge Shirley did not base this finding of probable cause on Officer Hanshew's suspicion that the truck was involved in the Waffle House robbery.  Rather, the magistrate judge found probable cause to stop the truck because it was being driven in excess of the speed limit for more than ten miles and because the occupants never submitted to the officers' attempts to pull the truck over but were only forced to come to a stop by the spike strip [Doc. 26, p. 9].  These facts are corroborated by the audio recording of the officers' radio conversations.

**E.** **Objection to the Finding that the Police had Probable Cause to Believe the Defendant Had Robbed the Waffle House**

The defendant objects to the R&R's finding that the officers did not have probable cause to arrest the defendant when they pulled him from the truck. He argues that Judge Shirley dismissed information that Officer Hanshew was informed that the defendant was hiding behind a wall and that the officer, without justification, proceeded to pursue and to arrest the defendant relying on only a "hunch." The defendant argues that these factors detract from any finding of probable cause and that a "hunch" and a speeding truck do not establish probable cause to arrest the defendant.

The Court overrules this objection. As Judge Shirley pointed out, an officer may arrest an individual if the officer has probable cause to believe that person has committed or is committing a felony based on the totality of the circumstances [Doc. 26, p. 10 (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983))]. The magistrate judge found, after considering the dispatch informing the officers of the robbery, the temporal and geographical proximity of the officers' sighting of the truck and the Waffle House, the erratic driving of the truck, the ten mile pursuit at high speeds, the forcible stop of the truck, the defendant's refusal to exit the truck, and the appearance of the defendant and the location of the yellow bag and cash in close proximity to the defendant, that the totality of the circumstances supported the determination that the officers had probable cause to believe the occupants of the truck were involved in the robbery and had probable cause to arrest and search the defendant [*Id.*, pp. 10-13].

Given the magistrate judge's analysis of the totality of the circumstances, the Court rejects the defendant's arguments regarding the proximity of the truck to the Waffle House, the defendant's "generic" physical appearance, the lack of evidence indicating that the clothing in the truck belonged to the defendant, and Officer Hanshew's "hunch," because such arguments were considered and rejected by the magistrate judge and because Judge Shirley's analysis of the totality of the circumstances supports his probable cause determination.[2]  In sum, the Court agrees with Judge Shirley that the officers had probable cause to arrest and search the defendant.  *See Chimel v. California*, 395 U.S. 752, 762-63 (1969) (holding that a defendant may be searched incident to an arrest without violating the Fourth Amendment).

### F.     Objection to the Application of the Automobile Exception

The defendant objects to the R&R's finding that the search of the truck following the defendant's arrest did not violate the Fourth Amendment under the automobile exception. In support of this objection, the defendant argues that the search violated his rights because it was performed without probable cause and because no exigent circumstances existed.

---

[2]"Viewing this information along with the proximity and manner of driving of the truck, the Court still concludes that officers' observations allowed them to suspect reasonably that the truck was involved in the robbery. . . . .  While the fact that the Defendant matched the basic description of the robber might have alone been lacking, his flight from the police immediately after the robbery and his proximity to the yellow bag gave the officers reasonable grounds for their belief that the Defendant was the robber." [Doc. 26, pp. 11, 12].

The Court overrules this objection. The magistrate judge considered and analyzed the automobile exception to the warrant requirement, determining that the same circumstances that provided probable cause for the officers to believe the defendant was the robber also provided probable cause for the officers to believe that the truck would contain evidence of the robbery. As to the existence of exigent circumstances, the U.S. Supreme Court has emphasized that there is no separate exigency requirement for the automobile exception, *Maryland v. Dyson*, 527 U.S. 465, 466 (1999), and the Supreme Court and the U.S. Court of Appeals for the Sixth Circuit have stated that the automobile exception is justified not only by the "ready mobility" of vehicles, but also by the lesser expectation of privacy operators have in their vehicles. *See United States v. Smith*, 510 F.3d 641, 649 (6th Cir. 2007) (citing *California v. Carney*, 471 U.S. 386, 392 (1985); *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001)). The Sixth Circuit has also upheld warrantless automobile searches in which the officers were in control of both the keys to the vehicle and the operator/owner of the vehicle. *See Graham*, 275 F.3d at 507-11; *see also United States v. Hofstatter*, 8 F.3d 316, 322 (6th Cir. 1993) (*per curiam*) ("Although the government might have had time to secure a warrant to search the automobile, there was no requirement that it do so.").

### G. Objection to the Inventory Search Exception

The defendant objects to the R&R's finding that the officers' search of the truck following the defendant's arrest did not violate the Fourth Amendment under the inventory search exception. In support of this objection, the defendant argues that the officers did not have probable cause to seize the truck for asset forfeiture and the true purpose of the

impoundment was not to promote public safety or facilitate the flow of traffic because the truck was in a utility area and no traffic was observed around it.

The Court overrules this objection. First, there is no probable cause determination required for the inventory search exception to apply. Second, the magistrate judge properly considered the factors required for the inventory search exception to the warrant requirement. Judge Shirley found that standard criteria and established DPD policy required that the truck, which was immobilized and partially blocking the road, be impounded [Doc. 26, pp. 17-19]. Judge Shirley also noted that the truck was being seized for asset forfeiture because the officers suspected that the truck had been used in the commission of a serious crime and it would have been unreasonable to permit the arrested owner to remove the truck [*Id.*, p. 19]. Third, based on the testimony of Detective Lodwick, the magistrate judge found that attempted asset forfeiture of the truck was appropriate given the nature of the alleged crime, which, as explained above, the officers had probable cause to believe was committed by the defendant. Finally, the defendant has provided no evidence to refute the officers' testimony that the truck was not partially blocking the road and such a finding did not require the magistrate judge to find that traffic was also, at that time, being impeded.

## H. Objections to Statements

The defendant's final objections are to the R&R's findings that the defendant's statement upon being removed from the truck was a spontaneous, voluntary utterance for which *Miranda* warnings are not required and that the defendant's statements to Officer Hanshew and Detective Lodwick while the defendant was in the patrol car were voluntarily

15

and knowingly made. The defendant argues that the defendant's first "statement . . . was not voluntarily given, but given under duress" because the defendant was intimidated, fearful of being physically harmed, and had time to concoct a statement prior to being removed from the truck [Doc. 30, p. 21]. As to his statements in the patrol car, the defendant argues that these statements were not the product of free and rational choice because the defendant feared being beaten and because the statements were given in a coercive environment.

The Court overrules these objections. As to the first statement, the magistrate judge considered the defendant's argument regarding his fear of the police and their behavior. In doing so, Judge Shirley noted that while the defendant may have felt frightened at the time of his arrest, there was no evidence that the officers removed him from the truck in order to elicit an incriminating statement and the circumstances of his statement indicated that the officers "[did] not behave coercively in order to pressure the Defendant into confessing" [Doc. 26, pp. 23-24] given that the defendant made the statement without any questioning or pressure by the police. Because the defendant has presented the Court with no additional or other evidence of duress or coercion, and because the defendant made this statement without being questioned or otherwise pressured by any of the officers beyond what they had to do to effectuate the arrest of the occupants of the truck after the pursuit, the Court agrees with the recommendation of the magistrate judge and finds that no *Miranda* warnings were required and this was the type of "[v]olunteered statement[] . . . not barred by the Fifth Amendment[.]" *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

16

As to the statements made by the defendant while he was in the backseat of the patrol car, Judge Shirley found that these statements were made after the defendant was read and understood his *Miranda* rights. The magistrate judge also found, after an analysis of the totality of the circumstances, that although the location of the statements—the back of the patrol car—indicated coerciveness, the other circumstances surrounding the statements did not show that the police conduct was objectively coercive or that the defendant's will was overborne. Judge Shirley found that the uncontradicted testimony of Officer Hanshew indicated that only one or two officers were near the defendant at the time he made the statements; the officers were outside the patrol car; none of the officers had their weapons drawn; the atmosphere was calm; there was no evidence that the defendant was hit or physically harmed; and both officers testified that the defendant understood his rights as they were read to him [Doc. 26, pp. 27-28]. The magistrate judge also noted that the defendant had considerable experience with the criminal justice system, there was no testimony or evidence rebutting the officers' testimony that the defendant indicated that he understood the *Miranda* warnings, and because the questioning by the police was not repeated or prolonged in nature but only lasted a few minutes [*Id.*, pp. 29-30]. Accordingly, because the defendant has presented no evidence contradicting the officers' testimony as to whether the defendant was given, heard, and manifested his understanding of his *Miranda* rights, and because the defendant has provided no additional or other evidence of objective police coercion, the Court agrees with the recommendations of the magistrate judge that the defendant's statements in the patrol car should not be suppressed.

## III. Conclusion

For the reasons given above, the Court **OVERRULES** the defendant's objections [Doc. 30] to Magistrate Judge Shirley's R&R and **ACCEPTS IN WHOLE** the R&R [Doc. 26]. The defendant's motion to suppress [Doc. 17] is hereby **GRANTED in part**, in that the defendant's statement to Officer Hanshew while the defendant was being transported to the Justice Center should be **SUPPRESSED**, and that the motion to suppress be **DENIED** in all other aspects.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE